# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

IN RE:

**RX PRO OF MISSISSIPPI, INC.**
**d/b/a McDANIEL PHARMACY,**                                    CASE NO. 16-00288-NPO

**DEBTOR.**                                                      **CHAPTER 11**

**DR. JOHN ADAMS, individually,**
**and by and on behalf of SPECIALTY**
**HEALTH MARKETING SYSTEMS, LLC,**

                                                                **PLAINTIFFS**

**V.**                                              **ADV. PROC. NO. 16-00012-NPO**

**NOVA MEDICAL SOLUTIONS, LLC,**
*et al.,*                                                       **DEFENDANTS**.

## MOTION FOR WITHDRAWAL OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d), OR, ALTERNATIVELY, MOTION FOR ABSTENTION AND REMAND PURSUANT TO 28 U.S.C. §§ 1334(c), 1452(b)

### *PURSUANT TO LOCAL RULE 5011-1(a)(3), DEFENDANT HEREBY NOTES THAT RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE*

Defendant Nova Medical Solutions, LLC ("Defendant"), by and through undersigned counsel, pursuant to 28 U.S.C. §§ 157(d), 1334(c), 1452(b), Rules 5011(a) and 9014 of the Federal Rules of Bankruptcy Procedure, and Loc. R. 5011-1, moves (this "Motion") for entry of an order withdrawing the reference so that the case is heard by the United States District Court for the Southern District of Mississippi (the "District Court"). Alternatively, in the event the reference is not withdrawn, Defendant requests the entry of an order providing that the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court") shall abstain from hearing the above-styled adversary proceeding (the "Adversary Proceeding") and remand the same to the Chancery Court of Hinds County, Mississippi (the "State Court"). In support of its Motion, Defendant states as follows:

26972258 v1

## SUMMARY

The litigation represented by this Adversary Proceeding was originally commenced by Plaintiffs in the Chancery Court of Hinds County, Mississippi (the "State Court Lawsuit") on April 29, 2014, nearly two (2) years prior to the filing of the relevant bankruptcy cases. Plaintiffs' claims, as pled in the Adversary Proceeding, are derived exclusively from state law and arise out of alleged pre-petition conduct.  In short, Dr. Adams, a physician, seeks a judgment declaring, among other things, that he is a partial owner of one or more of the Defendants, thereby entitling him to the profits of these companies.

The court that ultimately addresses these claims will have to apply various state and federal laws to address Dr. Adams' state law claims. Additionally, the court will have to apply certain federal statutes—namely, the Stark Laws, the Anti-Kickback Laws, and the False Claims Act—to the facts in this Adversary Proceeding.  Specifically, the court will have to analyze the various entities' connection (i.e., historical referrals) with Dr. Adams and his group of physicians in order to conclusively determine whether his corporate ownership is legal and therefore actionable. In order to determine whether Dr. Adams has a right of action under the corporate ownerships and the attendant contracts as alleged, the deciding court will have to make a substantial and material determination that Dr. Adams' relationship with these entities would not offend or violate any of those federal laws.  To the extent that relationship is found to be illegal under federal law, Dr. Adams' claim of ownership necessarily fails.[1]

Based on the circumstances of this matter, Defendant asserts that mandatory and/or permissive withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d)

---

[1] Defendant explicitly contends that it never operated or entered into any arrangements with Dr. Adams that would, or could, have violated any federal or state law, statute, or regulation.

is appropriate. Alternatively, an order for abstention and remand of the Adversary Proceeding to the State Court should be entered pursuant to 28 U.S.C. §§ 1334(c), 1452(b).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.      Dr. Adams, a Mississippi resident, is a practicing pain physician who often prescribes pain medication in the form of compounding pharmaceuticals to patients. [Deposition of Dr. John Adams, pg. 123-124].

2.      On April 29, 2014, Dr. Adams filed his Complaint in the State Court. Almost a year later, on April 27, 2015, he filed his First Amended Complaint.  In his First Amended Complaint, Adams alleges that he holds a 33.33% ownership interest in a non-debtor company, Specialty Health Marketing Systems, LLC ("SHMS"), and a 20% ownership interest in debtor company, RxPro Compounding & Pharmacy, Inc. ("RxPro").  The majority owners of SHMS and RxPro, all of whom are Mississippi residents, deny these allegations.  [Bankr. Doc. No. 24-1 at pg. 120-124; Answer of Defendant, pg. 12-16].  Both SHMS and RxPro are healthcare-related businesses which produce or are related to compounding pharmaceuticals subject to federal healthcare regulation. [23]

3.      Dr. Adams further alleges that the majority members of SHMS have misappropriated his interests in that company and have diverted funds from SHMS into other

---

[2] SHMS, a Mississippi entity which is licensed in multiple states, was formed for the purpose of, *inter alia*, "the compounding of materials for prescriptions and over-the-counter drugs on behalf of World Health Industries to any pharmacy, but inclusive of Monroe Clinic Drugs, Sterlington Village Pharmacy, Vicksburg Special Care Pharmacy, and Gluckstadt Special Care Pharmacy." These pharmacies are registered in Mississippi and Louisiana. [Bankr. Doc. No. 28-1 at pg. 5; First Amended Complaint at ¶23].

[3] Rx Pro, a Florida entity which is licensed in multiple states, was established "to market, produce and sell compounded prescription pain cream product." [Bankr. Doc. No. 28-1 at pg. 10-11; First Amended Complaint at ¶38].

entities owned or controlled by Defendants. [Bankr. Doc. No. 28-1 at pg. 5, 6; First Amended Complaint at ¶¶24, 28].

4.   Similarly, Dr. Adams claims that Defendants froze him out of his alleged 20% ownership interest in Rx Pro, benefitted from his capital contribution of $15,625, and never distributed any profits to him. [Bankr. Doc. No. 28-1 at pg. 11; First Amended Complaint at ¶39]. As such, he has alleged breach of fiduciary duties and usurpation of business opportunities, among other claims. [Bankr. Doc. No. 28-1 at pg. 13-14; First Amended Complaint at ¶47, 52].

5.   One of the former chancellors presiding over these allegations in the State Court commented that before any issues of liability could be decided, the initial question of ownership in Rx Pro must be decided.  [Bankr. Doc. No. 28-6 at pg. 61-62; Doc. 194, pg. 2-3].  Any determination of ownership also implicates a determination of the legality of Dr. Adams' ownership in companies across the multistate footprint to which he and his medical group wrote prescriptions.

6.   In addition to state law, Dr. Adams' allegations of ownership necessarily involve determinations of non-bankruptcy federal law, including whether there is a conflict between Dr. Adams' alleged ownership interest in these entities and the mandates of the Stark law, the Anti-Kickback Acts and the federal False Claims Act.[4]

7.   On February 24, 2016, Plaintiffs filed a Notice of Removal of this litigation from the State Court to this Court based upon the pendency of the bankruptcy cases of two (2) of the seventeen (17) defendants. [Bankr. Doc. No. 29-4 at pg. 92-140, Doc. 276]. The Court

---

[4] Defendant has moved to file an amended answer that includes several defenses, including illegality, pursuant to Rule 15(a), which requires the State Court to grant leave to amend where "justice so requires." Miss. R. Civ. P. 15(a).  Even if the this motion is denied, Defendant's current Answer asserts a Rule 12(b)(6) defense, among others, that allows Defendant to assert that Plaintiffs' claims are meritless as a matter of law.

immediately referred this matter to the Bankruptcy Court based upon its Standing Order of Reference. Defendant filed a statement with the Bankruptcy Court pursuant to Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure that (a) the allegations in the Adversary Proceeding are not core proceedings, and (b) that it does not consent to the entry of any final judgments or orders in the Adversary Proceeding by the Bankruptcy Court. [Bankr. Doc. No. 23]. Other defendants filed similar statements. [Bankr. Doc. No. 12, 14, 15, 18, 20].

## ARGUMENT

### A.   THE DISTRICT COURT SHOULD WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 157(d).

#### 1.   Mandatory Withdrawal is Warranted.

Pursuant to 28 U.S.C. § 157(d), the District Court:

> shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolutions of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Courts within the Fifth Circuit interpret this provision to make withdrawal mandatory "when a claim **or defense** entails 'material and substantial consideration' of non-Bankruptcy Code federal law." *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 347 (S.D. Tex. 2009) (emphasis added) (citing *In re Vicars Ins. Agency*, 96 F.3d 949, 952 (7th Cir. 1996); *Levine v. M&A Custom Home Builder & Developer*, 400 B.R. 200, 203 (S.D. Tex. 2008)). A claim involves "'substantial and material consideration' of non-bankruptcy federal law [where] interpretation of the federal law rather than the mere application of well-settled law [is required]." *Rodriguez*, 96 F.3d at 348 (citing *Vicars*, 96 F.3d at 953-54). Withdrawal is mandatory "'when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law.'" *Id.*

This Motion was filed less than thirty-five (35) days from the Plaintiffs' filing of the Notice of Removal and is therefore timely. *See In re Quality Lease and Rental Holdings, LLC*, 2016 WL 416961, at *4 (Bankr. S.D. Tex. Feb. 1, 2016) (holding that motion to withdraw (mandatory and permissive) was timely filed even though beyond ninety (90) days from the date the Notice of Removal was filed). The Adversary Proceeding unquestionably concerns issues of federal non-bankruptcy law affecting interstate commerce, the resolution of which will require the Court to engage in "material and substantial consideration" thereof. One of Adams' primary allegations is that he, an undisputed physician, owns 33% of Specialty Marketing, LLC and 20% of RxPro Pharmacy and Compounding, Inc. [Bankr. Doc. No. 28-1 at pg. 6-7, 10-11; First Amended Complaint, ¶ 29, 39]. Adams contends that his ownership and the attendant contracts are valid and enforceable and that all legal conditions precedent related to his ownership have been met. [Bankr. Doc. No. 28-1 at pg. 16-17; First Amended Complaint, ¶ 63-64]. Contrarily, Defendants contend, *inter alia*, that the arrangement alleged by Dr. Adams would be in violation of federal law, Mississippi statutory law, and Florida statutory law, and is, therefore, *void ab initio*.

Specifically, in order to prevail on his claims, Dr. Adams, a practicing physician, bears the burden of proving that his alleged ownership in RxPro combined with his history of submitting prescriptions to the RxPro pharmacy and/or any other pharmacy named as a pharmacy in this litigation does not implicate the federal physician self-referral prohibition statute, 42 U.S.C. §1395nn and its implementing regulations (the "Stark Laws"); the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and its implementing regulations (the "Anti-Kickback Laws"); and the federal False Claims Act, 31 U.S.C. §3729, *et. seq.*[5] As such, a court

---

[5] The arguments are not indicative or an admission of any individual Defendants' knowledge and/or understanding of the law regarding physician ownership of a pharmacy when RxPro was formed or at current.

will have to give substantive and material consideration to whether the alleged ownership arrangement and contracts between Dr. Adams and Defendants offended the restrictions placed by the Stark Laws and Anti–Kickback Laws given Dr. Adams' history of writing pain management prescriptions to RxPro and/or other pharmacies named as defendants herein or owned by defendants named herein.[6]   The Stark Law is implicated:

> if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C. § 1395nn(a)(1).

Simply stated, the Stark Laws prohibit physicians from making patient referrals for "designated health services," such as outpatient prescription drugs, if the referring physician (or an immediate family member) has a "financial relationship" with the entity providing the services. *See* 42 U.S.C. § 1395nn(a)(1)(A). Under the Stark Laws, a physician has a "financial relationship" with an entity if the physician has "an ownership or investment interest in the entity," or "a compensation arrangement" with it. *See* 42 U.S.C. § 1395nn(a)(2). A "compensation arrangement" consists, with certain exceptions not here relevant, of "any arrangement involving any remuneration between a physician ... and an entity...." *See* 42 U.S.C. § 1395nn(h)(1)(A). "The term 'remuneration' includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." *See* 42 U.S.C. § 1395nn(h)(1)(B). The Stark Laws define

---

Defendants' rights related to these issues, especially any determination that it or any of the other defendants knew of, much less acted, in violation of any law are fully reserved.

[6] Both regulations govern claims for services rendered following "referrals" by a physician having a "financial relationship" with the service provider.

"referral" as "the request by a physician for the item or service, including the request by a physician for a consultation with another physician (and any test or procedure ordered by, or to be performed by (or under the supervision of) that other physician)." *See* 42 U.S.C. § 1395nn(h)(5)(A). The "oft-stated goal" of the Stark Laws are "to curb overutilization of services by physicians who could profit by referring patients to facilities in which they have a financial interest." *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 95 (3d Cir. 2009).

Relevant here, the Stark regulations elaborate on the definition of a prohibited "indirect compensation arrangement." *See* 42 C.F.R. § 411.354(c)(2). Such an arrangement exists if:

> (1) an "unbroken chain" of persons or entities have financial relationships linking the referring physician to the healthcare entity furnishing "designated health services" (the "DHS entity");
>
> (2) the compensation arrangement in the chain closest to the physician receives "aggregate compensation" that "varies with, or otherwise reflects, the volume or value of referrals" generated for the DHS entity; and
>
> (3) the DHS entity has either "actual knowledge of," or acts in "reckless disregard or deliberate ignorance of," the fact that the aggregate compensation varies in this manner.

*See* 42 C.F.R. § 411.354(c)(2). *U.S. ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 663 (W.D. Pa. 2014)

Here, the Court will have to determine whether Dr. Adams' allegations of ownership in RxPro implicate the Stark Laws' definition of "financial relationship" whether directly or indirectly. The Court will then have to consider whether Dr. Adams' ownership meets any of the exceptions contained in § 1395nn. For instance, the Stark regulations discuss an exception to ordinarily prohibited indirect compensation arrangements where:

> (1) The compensation received by the referring physician ... is fair market value for services and items actually provided and not determined in any manner that takes into account the value or volume of referrals or other business generated by the referring physician for the [DHS entity].

(2) The compensation arrangement ... is set out in writing, signed by the parties, and specifies the services covered by the arrangement...

(3) The compensation arrangement does not violate the anti-kickback statute (section 1128B(b) of the Act), or any Federal or State law or regulation governing billing or claims submission.

42 C.F.R. § 411.357(p). Aside from the exception for certain indirect compensation arrangements, the Stark Laws include other important exceptions to liability. *See* 42 U.S.C. §§ 1395nn(c)-(e). Furthermore, the Stark regulations include additional regulatory exceptions and provide guidance on the application of the statutory exceptions. *See* 42 C.F.R. § 411.357. In this case, a court will have to determine whether the alleged ownership relationship implicates the strictures of the Stark Laws and whether that relationship fits within an exception to those strictures. The novel and substantial applicability of Stark and its exceptions satisfies the requirement of "substantial and material consideration" of non-bankruptcy federal law necessary for the entry of an order granting mandatory withdrawal.

There are other federal laws to be considered based on Dr. Adams' allegations. The Anti–Kickback Laws are another federal body of law aimed at preventing fraud in the context of federal healthcare programs. The Anti–Kickback Statute makes it unlawful to knowingly and willfully solicit or receive any remuneration for referrals of services covered by federally funded medical services:

(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility,

> service, or item for which payment may be made in whole or in
> part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more
than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a–7b(b). As with violations of the Stark Laws, there are also discrete statutory

or regulatory exceptions thereto. Those exceptions, also known as the "safe harbors," are

provided by statute and in U.S. Department of Health and Human Services regulations, which

may be found at 42 C.F.R. § 1001.952. Again, a court would have to interpret these statutes and

regulations to determine whether they are applicable here, and, if so, how.

A third body of federal law that will require material analysis is the federal False Claims

Act and its accompanying regulations and associated case law. Dr. Adams' alleged ownership

may implicate Section 3729 of the False Claims Act ("FCA"), which imposes liability on any

person or entity who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the
> United States Government or a member of the Armed Forces of the United States
> a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the Government;

> (3) conspires to defraud the Government by getting a false or fraudulent claim
> allowed or paid;....

31 U.S.C. 3729(a)(1)-(3). Falsely certifying compliance with the Stark Laws or Anti–Kickback

Laws with knowledge of the certificate's falsity in connection with a claim submitted to a

federally funded insurance program is actionable under the FCA. *See United States ex rel.*

*Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

The presiding court will have to analyze these federal statutes in relation to the entities'

connection (i.e., historical referrals) with Dr. Adams and his group of physicians in order to

conclusively determine whether his corporate ownership is legal and therefore actionable. In

order to determine whether he has a right of action under the corporate ownerships and the attendant contracts as alleged, the deciding court will have to make a substantial and material determination that Dr. Adams' pleadings related to ownership would not offend or violate any of the referenced federal laws -- the Stark Laws, the Anti-Kickback Laws and the False Claims Act. Illegality under the federal laws will undoubtedly bar Adams' prima facie claims. In considering his ownership interests, Mississippi law is clear that illegal ownership would not give rise to any right of action for Adams:

> Nearly a century ago, the *Price* Court specifically held:
>
> If a plaintiff cannot open his case without showing that he has broken the law, a court will not aid him. It has been said that the objection may often sound very ill in the mouth of the defendant, but it is not for his sake the objection is allowed; it is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or illegal act. The principle has been applied in numerous cases wherein its application seems to have been of doubtful propriety, but the principle as stated is undoubtedly sound in logic, and necessarily affords the true test for the guidance of the courts.
>
> This rule in Mississippi applies to contracts cases as well, preventing relief on a claim based on a contract that is illegal or against our state's public policy. This Court reemphasized the Western Union rule later in another case by holding that a plaintiff may be barred from any right of action when the incident giving rise to the claim was rooted in the plaintiff's violation of law.

*Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484-85 (Miss. 2006) (internal citations omitted). The same is true under Florida law. *See Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. Dist. Ct. App. 2001) (holding that doctor-supplement distributor referral agreement was void because "[a] contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our courts").

Accordingly, because the Adams' claims requires the substantial and material analysis of complex federal laws, which clearly affect interstate commerce, mandatory withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) is appropriate.

### 2.    Permissive Withdrawal is Also Warranted.

Section 157(d) of Title 28 of the United States Code grants the district court discretion to:

> withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d). This is known as "permissive withdrawal." In determining whether "permissive" withdrawal is available, courts in the Fifth Circuit typically consider the following factors (as well as whether or not the motion seeking permissive withdrawal was timely filed):

(i)     Are the proceedings core or non-core;

(ii)    Do the proceedings involve a jury demand;

(iii)   Would withdrawal further uniformity in bankruptcy administration;

(iv)    Would withdrawal reduce forum-shopping and confusion;

(v)     Would withdrawal foster economical use of resources; and

(vi)    Would withdrawal expedite the bankruptcy process?

*Levine*, 400 B.R. at 203 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). **"The most important factor is whether the claims are core or non-core."** *In re Quality Lease and Rental Holdings, LLC*, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) (citing *South St. Seaport Ltd. P'ship v. Burger Boy (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir. 1996) (emphasis added)).

### a.    *Defendant's Request Was Timely Filed.*

Similar to mandatory withdrawal, there is no set time limit for filing a motion for permissive withdrawal pursuant to 28 U.S.C. § 157(d).  This Motion is filed less than thirty-five

(35) days from the date of the Notice of Removal. Accordingly, Defendant asserts that this request is timely filed.

### b.   *The Adversary Proceeding Is Not a Core Proceeding.*

The Bankruptcy Code supplies a non-exhaustive list of matters that constitute "core proceedings." *See* 28 U.S.C. § 157(b)(2)(A)-(P). In defining the scope of a "core proceeding," the Fifth Circuit has observed that "a proceeding is core under section 157 if it involves a substantive right provided by title 11 or if the proceeding [], by its nature, could arise only in the context of a bankruptcy case." *Reed v. Mississippi Farm Bureau Mut. Ins. Co.*, 299 B.R. 804 (S.D. Miss. 2003) (citing In re *Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) (quoting *In re Wood*, 825 F.2d 90 (5th Cir. 1987)). "In other words, if a claim is based on state law and the claim could arise outside of the context of the bankruptcy proceeding, then it is not a core proceeding." *Id.*

In *Wood*, an adversary proceeding was commenced in the bankruptcy court for the United States District Court of Mississippi against debtors for wrongful appropriation of corporate assets. In response, Debtors argued that the bankruptcy court did not have jurisdiction to hear the case. The bankruptcy court disagreed, concluding that the matter constituted a "core" proceeding over which it held jurisdiction. On appeal, the district court held that the proceeding was neither a core proceeding nor an "otherwise related" or "non-core" proceeding. The matter was then appealed to the Fifth Circuit Court of Appeals, which held as follows:

> The plaintiff argues that his action is literally a claim against the estate, which is expressly defined as a core proceeding by section 157(b)(2)(B). We disagree. In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding. The form of this action is not that of a 'claim' as that term is used in bankruptcy law. A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law

> right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim. Here the plaintiff has not filed a proof of claim and has not invoked the peculiar powers of the bankruptcy court. The substance of this action does not support a finding of core status. The essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law. The suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters. Conceivably, a final judgment in this proceeding in the plaintiff's favor may lead to proceedings to allow the claim or to discharge the debt. At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding. The plaintiff's suit is not a core proceeding.

*Wood*, 825 F.2d at 97-98.  The Fifth Circuit went on to note that the claims asserted by the plaintiff could conceivably affect the debtors' bankruptcy estate. Therefore, the claims asserted by the plaintiff were non-core claims over which the bankruptcy court held "related to" jurisdiction.

Similar to the claims in *Wood*, and as shown above, the claims in the Adversary Proceeding are "based on state created rights[;] had there been no bankruptcy, [this Adversary Proceeding] could have proceeded in state court." *Wood* at 97. Furthermore, as noted by the Fifth Circuit in *Wood*, the State Court litigation would not be transformed into a core proceeding if Plaintiffs filed proofs of claim against the bankrupt debtors (which has not occurred) since the nature of the State Court litigation is inherently different from the nature of the claims allowance process triggered by the filing of a proof of claim.  *See Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 264 (Bankr. S.D. Fla. 2010) (citing *Wood* and *In re Toledo*, 170 F.3d 1340 (11th Cir. 1999)) (Some "courts have rejected the concept that the filing of a proof of claim changes the character of the prepetition lawsuit against the debtor").

Accordingly, the claims and causes of action set forth in the Adversary Proceeding do not constitute a core proceeding.

     **c.**     ***The Adversary Proceeding Does Not Feature a Jury Demand.***

The parties to the State Court litigation have waived their right to a jury trial.

**d.  *Defendant Has Never Consented to the Jurisdiction of the Bankruptcy Court.***

Pursuant to Defendant's Rule 9027(e)(3) notice, Defendant informed the Bankruptcy Court that it does not consent to the Bankruptcy Court's entry of final orders or judgments relating to the allegations set forth in the Plaintiffs' Complaint because each allegation therein is non-core. Furthermore, Defendant informed the Bankruptcy Court that it reserved the right to file a motion to withdraw the reference. Consistent with this notice, Defendant is now requesting that the Court withdraw the reference to the Bankruptcy Court so that this Court, which is empowered to enter final judgments and orders relating to non-core matters, may adjudicate the claims and defenses in this matter, which, in turn, will promote judicial economy. *See Liljeberg Enterprises, Inc. v. Lifemark Hospitals of Louisiana, Inc.*, 2000 WL 63307, *4 (E.D. La. Jan. 21, 2000) (holding that motion to withdraw was not an attempt to forum shop, but instead was intended more for economical use of resources).

**e.  *Withdrawal Would Not Inhibit Uniformity in Bankruptcy Administration.***

Withdrawal does not inhibit uniformity in bankruptcy administration. The claims at issue do not require application of federal bankruptcy laws, and the relevant statutory provisions clearly contemplate that the state law claims and causes of action asserted by Plaintiffs will be heard and adjudicated by the District Court, thereby allowing the Bankruptcy Court to focus on the administration of the bankruptcy estate. *See Liljeberg Enterprises, Inc.*, 2000 WL 63307 at *4 (holding that uniformity of bankruptcy administration was a non-issue since resolution of the litigation does not rely on the rules of bankruptcy).

**f.  *Withdrawal Fosters Economical Use of Resources.***

Defendant avers that withdrawal under these circumstances would foster the economical use of resources, specifically those of resources of the Courts. Should the Bankruptcy Court continue to preside over this case, the Bankruptcy Court will only be allowed to enter proposed findings of fact and conclusions of law due to the facts that the claims are non-core, and Defendant has not consented to the entry of a final judgment thereon by the Bankruptcy Court. Accordingly, if the Bankruptcy Court is allowed to retain the Adversary Proceeding, then both the Bankruptcy Court and the District Court will have to review the relevant facts and law, which does not support judicial economy. *See In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 878 (E.D. La. 2011) (noting that judicial efficiency is promoted where withdrawal of reference is granted to allow district court to adjudicate non-core claims when bankruptcy court could only issue proposed findings of fact and conclusions of law).

> **g.** *Withdrawal Would Expedite the Bankruptcy Process.*

Defendant asserts that a transfer of the Adversary Proceeding to the District Court would expedite the bankruptcy process, as such transfer will allow the Bankruptcy Court to focus on the administration of the bankruptcy process instead of getting bogged down in this litigation, which currently has over 270 filings and over 30 pending motions. The District Court appears to be in the best position to address.

Based on the foregoing analysis, Defendant asserts that it is appropriate for this Court to "permissively" withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).

**B.    ALTERNATIVELY, THE BANKRUPTCY COURT SHOULD ABSTAIN FROM ADJUDICATING THE ADVERSARY PROCEEDING PURSUANT TO 28 U.S.C. § 1334(c) AND REMAND THE ADVERSARY PROCEEDING TO THE STATE COURT PURSUANT TO 28 U.S.C. § 1452(b).[7]**

---

[7] Defendant realizes that a motion requesting abstention and/or remand pursuant to 28 U.S.C. §§ 1334(c), 1452(b) is normally addressed by a bankruptcy court. However, because this Motion is properly before the Court with respect to Defendant's request for withdrawal of the

1.      **Mandatory Abstention is Warranted.**

In the event the Court does not believe "substantial and material consideration" of Defendant's non-bankruptcy federal law defenses (*i.e.*, Stark Laws, Anti-Kickback Laws, and the False Claims Act) is required to adjudicate the claims and causes of action set forth in the Adversary Proceeding and therefore denies Defendant's request for withdrawal of the reference pursuant to 28 U.S.C. § 157(d), Defendant asserts that the pre-petition state law, non-core claims asserted by Plaintiffs should be adjudicated by the State Court.  As set forth in Section 1334(c)(2) of the Bankruptcy Code, a bankruptcy court must abstain from hearing a proceeding under the following circumstances:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

11 U.S.C. § 1334(c)(2). The foregoing statutory language can be broken down into the following five part test:

(1)      A motion has been timely filed requesting abstention;

(2)      The cause of action is essentially one that is premised on state law;

(3)      The proceeding is non-core or related to the bankruptcy case;

(4)      The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and

---

reference pursuant to 28 U.S.C. § 157(d), and because the Court has jurisdiction to hear and adjudicate the alternative request for abstention and remand, Defendant asserts that this Court should also address Defendant's alternative request for abstention and remand in the interest of judicial economy.  If the Court believes the Bankruptcy Court should adjudicate this alternative request for abstention and remand, then Defendant respectfully requests the Court to transfer this request to the Bankruptcy Court in the event the Court denies Defendant's request for withdrawal of the reference pursuant to 28 U.S.C. § 157(d).

(5)     The proceeding has already been commenced and can be timely adjudicated in a state forum.

*Reed*, 299 B.R. at 807-08 (citing *In re McCray*, 209 B.R. 410, 414 (Bankr. N.D. Miss. 1997)).

There is no set time limit for filing a motion requesting mandatory abstention. *See In re Fort Worth Osteopathic Hosp., Inc.*, 406 B.R. 741 (Bankr. N.D. Tex. 2009) (noting that 30-day time limit for motions seeking remand pursuant to 28 U.S.C. § 1447(c) is not applicable to a motion for mandatory abstention filed pursuant to 28 U.S.C. § 1334(c)(2)). Defendant avers that this Motion is timely filed since it is filed within thirty-five (35) days of the filing of Plaintiffs' Notice of Removal. The causes of action set forth in the Adversary Proceeding are premised exclusively on state law and are non-core claims. Furthermore, but for the existence of the bankruptcy case, there is no independent federal jurisdiction over the Adversary Proceeding, as there is no federal question jurisdiction,[8] and complete diversity does not exist to support diversity jurisdiction, as at least one defendant is, like Plaintiff, a resident of Mississippi. *See Harvey v. Grey Wolf Drilling*, 542 F.3d 1077 (5th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968) ("Complete diversity 'requires that all persons on one side of the controversy be citizens of different states than all person on the other side'")).

With respect to the last element, regarding whether this matter may be adjudicated timely in State Court, courts have looked to the following factors: "(1) backlog of state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court

---

[8] While federal law defenses are being asserted herein, the Supreme Court has held that the complaint, not a defendant's answer, determines federal question jurisdiction and that "Congress has long since decided that federal defenses do not provide a basis for removal." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). "Accordingly, the removing party cannot manufacture federal question jurisdiction by alleging federal defenses, counterclaims, or cross-claims." *In re Montcrest Energy, Inc.*, Case Nos. 14-04039, 14-04024, 2014 WL 6982643 (Bankr. N.D. Tex. Dec. 9, 2014).

proceeding would prolong the administration or liquidation of the estate." *Brown v. Shepherd (In re Lorax Corp.)*, 295 B.R. 83, 93 (Bankr. N.D. Tex. 2003).

The state court action was pending before the special Chancellor James D. Bell. He was appointed after recusal of the Hinds County Chancery judiciary. Judge Bell is a retired judge who is assigned cases by the Mississippi Supreme Court on an "as needed" basis. From that standpoint, there is little to no concern of a back log.

As to the second factor, the bankruptcy proceeding was only recently commenced, so there will be no prejudice visited upon the bankruptcy proceeding in which, to date, there have been no hearings or actions taken. The third factor also weighs in favor of abstention, as the Adversary Proceeding involves complex issues of fact and law more particularly described above. The Adversary Proceeding, whether litigated by the State Court or the Bankruptcy Court, will prolong the administration or liquidation of the estate. However, because this matter has been pending before the State Court for nearly two (2) years, Defendant asserts that the State Court is in the best position to timely adjudicate the claims asserted by Plaintiffs. Moreover, Defendant believes that the remaining defendants, including the debtor defendants, are willing to agree to a lift of the automatic stay to allow the litigation to proceed before the State Court.

Based on the foregoing arguments, Defendant asserts that the Bankruptcy Court must abstain from hearing and adjudicating the Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(2).

2. **Permissive Abstention is Also Warranted.**

Alternatively, in the event the Adversary Proceeding is not withdrawn to the District Court, the Court should enter an order requiring the Bankruptcy Court to permissively abstain from hearing a proceeding pursuant to 28 U.S.C. §1334(c)(1), which provides as follows:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Courts within this District have set forth the following non-exclusive list of factors to be considered when determining whether it is appropriate to exercise permissive abstention:

(1)   the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;

(2)   extent to which state law issues predominate over bankruptcy issues;

(3)   difficulty or unsettled nature of the applicable law;

(4)   presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5)   jurisdictional basis, if any, other than Section 1334;

(6)   degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7)   the substance rather than the form of an asserted core proceeding;

(8)   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)   the burden of the bankruptcy court's docket;

(10)  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)  the existence of a right to a jury trial

(12)  the presence in the proceeding of nondebtor parties;

(13)  comity; and

(14)  the possibility of prejudice to other parties in the action.

*Searcy v. Knotsman*, 155 B.R. 699, 710 (S.D. Miss 1993).

Applying each factor to the facts featured herein, and as shown herein:

(1)   a decision to abstain would allow the bankruptcy court to focus on the administration of the bankruptcy case instead of diverting significant time and resources to the litigation of the Adversary Proceeding;

(2)      state law issues predominate over bankruptcy issues, as all claims and causes of action asserted by Plaintiffs are pre-petition, non-core claims derived from state law, even though federal law is implicated in the defense of these claims;

(3)      the law to be applied to these issues, specifically the federal laws identified above, though not necessarily overly difficult to apply or unsettled, are complex in nature, and the District Court likely has more experience applying these laws;

(4)      there is no related proceeding commenced in state court or other nonbankruptcy proceeding;

(5)      as noted above, as the complaint is pled, there is no federal jurisdictional basis for the Adversary Proceeding apart from 28 U.S.C. § 1334;

(6)      the Adversary Proceeding could conceivably have an effect on the bankruptcy estate, but this is the extent of its relatedness to the main bankruptcy case;

(7)      the Adversary Proceeding is a non-core proceeding;

(8)      the Adversary Proceeding concerns state law claims and causes of action (despite federal defenses) that can be adjudicated by the State Court to judgment, with enforcement left to the Bankruptcy Court;

(9)      this factor is not implicated, but this Adversary Proceeding is unlike other cases tried in the Bankruptcy Court;

(10)      Defendant is unaware of any forum shopping by any of the relevant parties;

(11)      no jury trial has been demanded;

(12)      there are numerous non-debtor parties involved;

(13)      the trial of the Adversary Proceeding should occur in the State Court (if not the District Court), as the claims and causes of action asserted by Plaintiffs are derived exclusively from state law (*see Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 632 (Bankr. S.D. Tex. 2009) ("Absent countervailing circumstances [which do not exist in this case], the trial of state law created issues and rights should be allowed in state court....")); and

(14)      no party to the Adversary Proceeding would be prejudiced by abstention, but fifteen (15) of the seventeen (17) defendants may be prejudiced by being forced to litigate this matter in a forum to which they have not consented.

All but three of the factors—the eighth, tenth (Defendant is currently unaware of conduct that would rise to a level of forum shopping) and eleventh factors (Defendant concedes that no jury demand has been made)—weigh in favor of abstention. Furthermore, Defendant's request for permissive abstention is timely. *See In re Wood*, 84 B.R. 432 (S.D. Miss. 1988) (interpreting Section 1334(c)(1) to mean that there is no time limit for filing a request for permissive abstention); *see also Smith v. Wal-Mart Stores, Inc.*, 305 F.Supp.2d 652 (S.D. Miss. 2003) (noting that a court can raise permissive abstention at any time *sua sponte*, which is consistent with Loc. R. 5011-1(a)(2)). Accordingly, permissive abstention under 28 U.S.C. § 1334(c)(1) is warranted.

**C.     Equitable Remand is Also Warranted.**

Additionally, if the reference is not withdrawn to the District Court, the Adversary Proceeding should be remanded to the State Court pursuant to 28 U.S.C. § 1452(b),[9] which provides as follows:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b). Section 1452(b) and Section 1334(c) are "kindred statutes," as they are "similar in purposes and spirit." *Lee v. Miller*, 263 B.R. 757 (S.D. Miss. 2001). Accordingly, the circumstances that weigh in favor of abstention pursuant to Section 1334(c) likewise weigh in favor of remand pursuant to Section 1452(b). *Id.*

---

[9] As noted in *In re Ciclon Negro, Inc.*, 260 B.R. 832 (Bankr. S.D. Tex. 2001), the 30-day time limit for remand under 28 U.S.C. § 1447(c) does not apply to motions made pursuant to 28 U.S.C. § 1452(b). This Motion is timely under Section 1452(b).

As set forth above, the factors to be considered when determining whether mandatory and/or permissive abstention is appropriate weigh in favor of both mandatory and permissive abstention pursuant to Section 1334(c). These same factors support a request for equitable remand of the Adversary Proceeding to the State Court. Accordingly, the Adversary Proceeding should be remanded to the State Court pursuant to Section 1452(b).

## CONCLUSION

WHEREFORE, premises considered, Defendant Nova Medical Solutions, LLC requests the Court to enter an Order withdrawing the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), or, alternatively, to enter an Order requiring the Bankruptcy Court to (i) abstain from hearing and adjudicating the Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(c)(1)-(2), and (ii) remand the Adversary Proceeding to the State Court pursuant to 28 U.S.C. § 1452(b).

Respectfully submitted this the 28th day of March, 2016.

/s/Jamie D. Travis
Jamie D. Travis (MSB No. 99692)
*Attorney for Defendant Nova Medical Solutions, LLC*

OF COUNSEL:

Jamie D. Travis, MSB No. 99692
Angela D. Williams, MSB No. 103189
Gibbs Travis PLLC
1400 Meadowbrook Road, Suite 100
Jackson, Mississippi  39211
T:  (601) 487-2640
F:  (601) 366-4295
Email:  jtravis@gibbstravis.com
          awilliams@gibbstravis.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the parties set forth in the Electronic Mail Notice List as of the date hereof, including the following.

Robert T. Higginbotham, Jr.
J. Wilbourn Vise
G. Michael Massey
Massey, Higginbotham, Vise & Phillips, P.A.
3003 Lakeland Cove, Suite E
Jackson, Mississippi 39232

William M. Vines, Esq.
Jernigan, Copeland & Anderson, PLLC
587 Highland Colony Parkway
Post Office Box 2598
Ridgeland, Mississippi 39158-2598

John M. Lassiter
Bradley B. Vance
Burr & Forman LLP
401 E. Capitol Street, Suite 100
Jackson, Mississippi 39201

Michael J. Wolf
Page, Kruger & Holland, P.A.
P.O. Box 1163
Jackson, Mississippi

John Rocray
Rocray Law Offices, PLLC
1888 Main Street, Suite C-275
Madison, Mississippi 39110

Jamie D. Travis
Gibbs Whitwell, PLLC
1400 Meadowbrook Road, Suite 100
Jackson, Mississippi 39211

Mark W. Prewitt
World Health Industries, Inc.
1485 Livingston Lane
Jackson, Mississippi 39213

Clarence Webster, III
J. Alex Purvis
Megan Conner
Bradley Arant Boult Cummings, LLP
Suite 400, One Jackson Place
188 East Capitol Street
P.O. Box 1789
Jackson, Mississippi 39215-1789

Melissa R. Heidelberg
1230 Saint Ann Street
Jackson, Mississippi 39202

/s/Jamie D. Travis
Jamie D. Travis